PHILIP H. HUDSON, Appellant, v. J. M. HUSSEY.

Contracts: REFORMATION: EVIDENCE. The burden is upon one seeking to show that the terms of a written contract do not conform to the original agreement, and that alleged omissions from the writing were the result of mutual mistake. In the instant case the evidence is held insufficient to show that certain agreements

were omitted from the contract for plaintiff's services as a musical director.

*Appeal from Shenandoah Superior Court.*—HON. GEORGE H. CASTLE, Judge.

TUESDAY, APRIL 9, 1912.

IN this action, brought by plaintiff to recover balance of compensation due to him under a written contract with defendant, there was an equitable answer setting up grounds for reformation of the contract. The issue raised by a reply to this answer was tried on evidence, and a decree was entered in defendant's favor granting a reformation. From this decree, the plaintiff appeals. —*Reversed.*

*Frederick Fischer,* for appellant.

*T. W. Keenan* and *D. L. Wilson,* for appellee.

MCCLAIN, C. J.—The written contract under which the plaintiff sues for the recovery of compensation for services rendered, and which defendant seeks to have reformed, was entered into between defendant, the president of the Western Normal College, at Shenandoah, and the plaintiff, as a prospective teacher of music in that institution, and is as follows:

This contract, entered into by J. M. Hussey, as president of the Western Normal College, and Mr. Philip H. Hudson, instructor, witnesseth: First. Mr. Hudson agrees to teach piano, harmony, theory, musical history—all for the remaining part of the school year of 1909 and 1910, beginning September 27, 1910, forty-four weeks (44 weeks). Second. The compensation agreed upon to be paid monthly by the college to Mr. Hudson is 75 percent of the amount of tuition collected for all lessons given by him,

whether given at the college or in the city or community.
Payment of this amount to be made as follows, namely,
board at the faculty dining hall at $2.50 a week and the
balance in cash on the first day of each calendar month
succeeding the month of its earning, or at the end of the
regular quarter as he may desire. Third. It is also agreed
that at various times through the year as agreed upon
by all parties concerned, Mr. Hudson assisted by any
other music teachers of the conservatory, if desired, and
the elocution teacher, shall hold public entertainments, to
be prepared as college entertainments and that two-thirds
of the gross proceeds of these entertainments given by
the teachers of these departments shall revert to Mr.
Hudson or be allotted between him and the other teachers
participating, and that the remaining one-third of the pro-
ceeds shall revert to the college to cover expenses of light,
heat, advertising, etc. For entertainments to be given at
points out of the city all receipts above expenses shall go
to the teachers giving such concerts or entertainments.
Fourth. The Western Normal College agrees to advertise
the music conservatory in the college bulletins and in
other advertisements sent out and constantly make said
departments prominent in school, and further agrees to pro-
vide a suitable teaching room with piano, and to have the
room heated and lighted, cared for, for all individual or
class instruction and for rehearsals for entertainments.
Fifth. Mr. Hudson agrees to assist when requested in gen-
eral entertainments for the benefit of the college library
and for commencement and to have his departments assist
in furnishing appropriate music. All music furnished for
literary societies shall be under arrangement with the
societies. Sixth. Mr. Hudson agrees to render faithful, effi-
cient, and in every way loyal service to the college; sustain-
ing the policies of the school and co-operating with the
president and all members of the faculty for the highest
interests and success of the institution. Seventh. It is
hereby agreed that the various sources of income named in
this contract shall for the forty-four (44) weeks named
reach eight hundred ninety dollars ($890.00), besides
board, and if at the end of the school year, July 29th, the
income shall not have reached said amount, such deficit

shall be paid to Mr. Hudson in cash in full settlement of the services rendered. Eighth. By the signing of this contract each party to it becomes strictly responsible to the other to carry out its conditions in good faith. Signed and dated this 30th day of September, 1909. Philip H. Hudson, Instructor, Western Normal College. J. M. Hussey, President.

It appears from the evidence that in September, 1909, the Western Normal College was in need of a teacher of music to take charge of its musical conservatory, and defendant, the president of the institution, called upon plaintiff, a teacher of music at Lincoln, Neb., and solicited him to come to Shenandoah with a view to employment. During the forenoon of the 23d of September, there were negotiations between the plaintiff and the defendant at the defendant's home in Shenandoah with regard to such employment. No definite arrangement was entered into at that interview; but in the afternoon defendant called upon plaintiff at the hotel where he was waiting to take a train, intending to return home without any contract having been made, and renewed the negotiations, which resulted in an oral agreement in accordance with which plaintiff returned to Shenandoah on Tuesday and took up the work as director of the conservatory of music. Within a few days plaintiff requested that their contract be reduced to writing as had been previously agreed, and defendant drew up the written instrument above set out, which was signed by both parties.

In this action to recover compensation under the contract, instituted after the close of the school year, defendant alleges failure and refusal of the plaintiff to comply with the terms of the contract in various respects, to the plaintiff's damage, and by way of equitable defense asks the reformation of the contract so as to embody therein certain provisions which, it is alleged, were omitted by mutual mistake. The issue as to reformation was tried

separately as an equitable issue, and the court decreed reformation as follows: "Paragraph No. 1 of said contract is reformed so as to read: 'First. Mr. Hudson agrees to act as director of the department of music, in said college, under the supervision and direction of J. M. Hussey, and in harmony with the established rules and courses of study of the college, and to teach piano, harmony, theory, musical history—all for the remaining part of the school year of 1909 and 1910, beginning September 27, 1909, forty-four (44) weeks.' Paragraph 4 of said contract is hereby reformed by adding thereto at the end thereof the following: 'Mr. Hudson agrees to hold pupils' private and public recitals and to furnish frequently special music by students at the music department of the college for chapel exercises, and to organize an oratorio society, composed of music students in the college and musicians of the city of Shenandoah for the purpose of holding two musical festivals or exhibitions in Shenandoah during the school year, one of which such exhibitions shall be held in May and the other in July, 1910." The sole question for present determination is whether, under the evidence embodied in the record, this reformation was authorized. It may be conceded that the reformation granted would serve as a basis for the defense interposed by defendant to the recovery by plaintiff of the compensation for which he sues and to which it appears that he would be entitled under the terms of the contract as written.

The burden was upon the defendant to show that the terms of the written agreement did not conform to the oral agreement between the parties and that the alleged omissions in the written contract resulted from mutual mistake. Defendant testified that during the school year he made some complaints to plaintiff that some of his duties were not being performed, but there seems to have been between them no controversy as to the terms of the written contract until after the end of the school year.

It appears that defendant kept a duplicate of the written instrument, but did not refer to it again with regard to its terms until the controversy with plaintiff as to payment for his services arose. Under these circumstances, it is quite clear, without citation of authorities, that it was incumbent upon defendant to establish by clear and satisfactory evidence the omission from the written contract of specific provisions by mutual mistake.

The only witnesses testifying on the issue as to reformation were the defendant and his wife and the plaintiff. The defendant and the plaintiff gave somewhat different versions of their oral understanding of the arrangements under which plaintiff accepted the position of director of music in .the Western Normal. College, and we are well satisfied that the defendant does not make out a clear case of a final oral agreement with the plaintiff which embodied any terms not embodied in the written contract.

Defendant's wife testified as to the oral negotiations at defendant's home before the parties came to an oral agreement, and, conceding that her testimony tends in some measure to support the testimony of her husband as to what was said in that interview, still it does not support her husband's case as to the final oral agreement, for it is conceded that, when plaintiff left defendant's house on September 23d and went to a hotel preparatory to taking the afternoon train back to Lincoln, no agreement had been made. Whatever oral agreement there was to which both parties assented was made at the hotel, and not in defendant's house, and at that interview no one else was present. The testimony of defendant's wife does tend to show that, during the interview at defendant's home, the matters referred to in the fourth paragraph of the contract as reformed by the court were considered; but it does not tend to show that even at that time the plaintiff agreed to the terms embodied in the amendment to the paragraph.

On the other hand, the writing itself constitutes an admission on the part of defendant that the oral agreement was such and only such as is embodied in the written instrument; and this admission in itself supports and corroborates the testimony of the plaintiff. Defendant voluntarily drew up the writing as embodying his understanding of the oral contract. He offers no explanation for failing to embody therein all the terms of such contract, save that he drew it in a hurry and forgot some of the stipulations. Even after plaintiff had failed, according to defendant's testimony, to perform the contract in accordance with the terms of the omitted stipulations, defendant did not call plaintiff's attention to the contract nor examine it himself to see whether it contained the stipulations which it should have contained.

Under such circumstances, we do not think any case is made out for the reformation of the written instrument, and the decree of the lower court is *reversed.*